UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SANTO LANZAFAME in his fiduciary capacity as          :
a Trustee of THE STONE SETTERS LOCAL 84
PENSION FUND, ANNUITY FUND, VACATION          :
FUND, APPRENTICE FUND and INDUSTRY
PROMOTION FUND and as a Trustee of the          :
BRICKLAYERS LOCAL NO. 1 WELFARE AND
INSURANCE FUND and as President of the          :
BRICKLAYER AND ALLIED CRAFTWORKERS,
LOCAL UNION NO .1, NEW YORK, B.A.C.I.U          :
AFL-CIO,
                                                                              :   Civ. No. 07 Civ. 3351 (RWS)
                                     Plaintiffs,          :
                                                                              :
                        v.                                          :
                                                                              :
TRIBEC LTD., ADAM OTTAVINO  and          :
JOHN or JANE DOE FIDUCIARY,
                                                                              :
                                     Defendants.          :
------------------------------------------------------------------X

## DEFENDANTS' MOTION TO DISMISS OR STAY THIS
## ACTION BASED ON ARBITRATION CLAUSES

PLEASE TAKE NOTICE that the Defendants Tribec Ltd. and Adam Ottavino, by

their attorney, David J. Aronstam, Esq., will move this Court before the Honorable

Robert W. Sweet, U.S.D.J., at the Daniel Moynihan United States Courthouse, 500 Pearl

Street, Courtroom 18C, New York, New York 10007, at 2:00 p.m., on July 18, 2007, or

as soon thereafter as counsel can be heard, for an order or orders (i) staying this action

under the Federal Arbitration Act pending the conclusion of arbitration between the

parties, and (ii) such other and further relief as this Court deems just and proper.

In support of its motion, Defendants will rely on the declaration of David J.

Aronstam dated June 15, 2007 and the accompanying Memorandum of Law in support,

dated June 15, 2007.

PLEASE TAKE FURTHER NOTICE that Plaintiff's opposition, if any, is due on

or before July 6, 2007 at 5:00 p.m., and Defendants' Reply, if any, is due on or before

July 17, 2007 at 5:00 p.m.

Dated: New York, New York
      June 15, 2007

                           DAVID J. ARONSTAM, ESQ. (DA 5163)
                           192 Lexington Avenue, Suite 1202
                           New York, New York  10016
                           (212) 949-6210
                           Attorney for Defendants

To:    Delmas Costin, Esq.
       Holm & O'Hara LLP
       3 West 35th Street, 9th floor
       New York, New York 10001
       (212) 682-2280
       Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SANTO LANZAFAME in his fiduciary capacity as      :
a Trustee of THE STONE SETTERS LOCAL 84
PENSION FUND, ANNUITY FUND, VACATION      :
FUND, APPRENTICE FUND and INDUSTRY
PROMOTION FUND and as a Trustee of the      :
BRICKLAYERS LOCAL NO. 1 WELFARE AND
INSURANCE FUND and as President of the      :
BRICKLAYER AND ALLIED CRAFTWORKERS,
LOCAL UNION NO .1, NEW YORK, B.A.C.I.U      :
AFL-CIO,
                                                                          :
                                                                          :   Civ. No. 07 Civ. 3351 (RWS)
                              Plaintiffs,      :
                                                                          :
              v.                                                          :
                                                                          :
TRIBEC LTD., ADAM OTTAVINO  and      :
JOHN or JANE DOE FIDUCIARY,
                                                                          :
                              Defendants.      :
------------------------------------------------------------------X

## DECLARATION OF DAVID J. ARONSTAM IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS OR STAY THIS ACTION BASED ON ARBITRATION CLAUSES

DAVID J. ARONSTAM, declares, under penalty of perjury, pursuant to 28

U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney admitted to practice before this Court.  I make this

declaration to place before the Court certain documents that the Defendants rely upon in

support of their motion for an order or orders (i) staying this action under the Federal

Arbitration Act pending the conclusion of arbitration between the parties, and (ii) such

other and further relief as this Court deems just and proper.

2.      A true and correct copy of the Complaint filed by the Plaintiff in this

matter is annexed hereto as Exhibit A.

3.     A true and correct copy of the Memorandum of Agreement between the parties referred to at paragraph 17 of the Complaint filed by the Plaintiff in this matter is annexed hereto as Exhibit B.

4.     A true and correct copy of the Collective Bargaining Agreement between the parties referred to at paragraph 17 of the Complaint filed by the Plaintiff in this matter is annexed hereto as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on the 15th day of June, 2007.

By:_____
DAVID J. ARONSTAM

**EXHIBIT A**

UNITED STATES DISTRICT COURT for the
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SANTO LANZAFAME in his fiduciary capacity as a trustee of
the STONE SETTERS LOCAL 84 PENSION FUND,
ANNUITY FUND, VACATION FUND, APPRENTICE FUND
and INDUSTRY PROMOTION FUND and as a Trustee of the
BRICKLAYERS LOCAL NO. 1 WELFARE AND INSURANCE
FUND and as President of the BRICKLAYERS AND ALLIED
CRAFTWORKERS, LOCAL UNION NO. 1, NEW YORK,
B.A.C.I.U., AFL-CIO,

:
:
:
:
:
:
:
:
:

**07 CV 3351**

**COMPLAINT**

**JUDGE SWEET**

                     Plaintiffs,

          -against-

TRIBEC LTD., ADAM OTTAVINO and JOHN and/or
JANE DOE FIDUCIARY,

                     Defendants.

:
:
:
:
:
:
:
:
:

APR 2 6 2007

U.S. ......
CA.......

------------------------------------------------------------X

      Plaintiff SANTO LANZAFAME in his fiduciary capacity as a Trustee of the

STONE SETTERS LOCAL 84 PENSION FUND, ANNUITY FUND, VACATION FUND,

APPRENTICE FUND and INDUSTRY PROMOTION FUND, as a Trustee of the

BRICKLAYERS LOCAL NO. 1 WELFARE AND INSURANCE FUND (collectively,

"FUNDS"),  and as President of the BRICKLAYER AND ALLIED CRAFTWORKERS LOCAL

UNION NO. 1, NEW YORK, INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED

CRAFTWORKERS, AFL-CIO ("LOCAL 1") by their attorneys, HOLM & O'HARA LLP

("H&O"), as and for their Complaint against Defendants allege the following:

### NATURE OF ACTION

      1.     This is an action arising under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001, et seq., the Labor Management Relations Act of 1947

("LMRA"), 29 U.S.C. § 141, et seq., and the common law.

## JURISDICTION AND VENUE

2.    Jurisdiction over the causes of action alleged herein is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337; by 29 U.S.C. §§ 185(c), 1109(a), 1132(a)(2), 1132(a)(3), 1132(d), 1132(e)(1), and 1132(f); Fed. Rules Civ. Pro. Rule 19(a); 28 U.S.C. § 1367(a); and by the principles of supplemental jurisdiction.

3.    Venue is properly placed in the Southern District of New York under 29 U.S.C. §§ 185 (a) and 1132(e)(2) in that the Stone Setters Local No. 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund and Industry Promotion Fund are administered in the county of New York, New York.

## PARTIES

4.    Plaintiff FUNDS are jointly-trusteed "multiemployer plans" established pursuant to a collective bargaining agreement and by trust indentures. The FUNDS are "employee benefit plans" within the meaning of ERISA, 29 U.S.C. §§ 1002(2), (3), and 1132(d)(l) and "multiemployer plans" within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The FUNDS are authorized to maintain suit as an independent legal entity under 29 U.S.C. § 1132(d)(l). The Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund and Industry Promotion Fund are administered in New York County at 200 Park Avenue South, New York, New York 10003-1599. The Bricklayers Local No. 1 Welfare and Insurance Fund is administered in Queens County at 66-05 Woodhaven Blvd., Rego Park, New York 11374.

5.    Plaintiff LOCAL 1 is a voluntary association formed under the laws of the State of New York and a labor organization within the meaning of 29 U.S.C. § 185 that represents

employees in an industry affecting commerce as defined in 29 U.S.C. § 142(1) and 29 U.S.C.

§1002(12).  LOCAL 1 maintains offices located at 4 Court Square, Long Island City, New York

11101.

6.    Plaintiff SANTO LANZAFAME is a Trustee of the FUNDS, and President of

LOCAL 1, and this lawsuit is brought in his capacity as a fiduciary of the FUNDS within the

meaning of ERISA, 29 U.S.C. § 1002 (21).

7.    Upon information and belief, defendant TRIBEC LTD. ("TRIBEC") is a

corporation organized under, and existing by virtue of, the laws of the State of New York with its

office and principal place of business located at 23-03 45th Road, Suite 203, Long Island City,

NY 11101.

8.    Upon information and belief, TRIBEC is an employer engaged in an industry

affecting commerce, within the meaning of 29 U.S.C. § 185 and an employer within the meaning

of ERISA, 29 U.S.C. §§ 1002(5) and 1145.

9.    Upon information and belief, defendant ADAM OTTAVINO ("OTTAVINO"), a

natural person, is President of TRIBEC.

10.    Upon information and belief, defendant OTTAVINO is a fiduciary with respect to

the FUNDS within the meaning of ERISA, 29 U.S.C. § 1002(21)(A) and Article 3-A of the New

York Lien Law.

11.    Upon information and belief, OTTAVINO exercised authority or control

respecting the management or disposition of plan assets that should have been held in trust by

TRIBEC and remitted to the FUNDS.

12.    Upon information and belief, OTTAVINO exercised unauthorized dominion or

control respecting management or disposition of union dues and assessments ("DUES") that should have been held in trust by TRIBEC and remitted to LOCAL 1, in a manner that interfered with LOCAL 1's legal title or superior right of possession of said DUES.

13.    Upon information and belief, JANE and/or JOHN DOE FIDUCIARY ("DOE FIDUCIARY") is a fiduciary within the meaning of ERISA 29 U.S.C. § 1002(21)(A) and Article 3-A of the New York Lien Law.

14.    Upon information and belief, DOE FIDUCIARY exercised authority or control respecting the management or disposition of plan assets that should have been held in trust by TRIBEC and remitted to the FUNDS.

15.    Upon information and belief, DOE FIDUCIARY exercised unauthorized dominion or control respecting management or disposition of DUES that should have been held in trust by TRIBEC and remitted to LOCAL 1, in a manner that interfered with LOCAL 1's legal title or superior right of possession of said DUES.

**PRELIMINARY STATEMENT**

16.    TRIBEC is an Independent Contractor in the stone setting and stone tending trades.

17.    On July 18, 2006, OTTAVINO, on behalf of himself and TRIBEC, entered into a Memorandum of Agreement with LOCAL 1 ("MEMORANDUM") for the period July 1, 2005 through June 30, 2009, modifying and extending the terms of the Collective Bargaining Agreement between Independent Contractors and Local 1 Stone Setters and Stone Tenders effective July 1, 2002 to June 30, 2005 ("CBA") (collectively "AGREEMENT").

18.    The final paragraph of the AGREEMENT directly preceding the signature line

binds OTTAVINO "in a dual capacity both on behalf of himself and on behalf of the employer and represents by his signature his authority to bind the firm and the principals and members thereof."

19.    OTTAVINO, having executed the AGREEMENT, is bound personally for all liability arising under the AGREEMENT.

20.    The AGREEMENT, including but not limited to Articles 3 and 7, defines: a) the employees covered by the AGREEMENT; and b) the work covered by the AGREEMENT.

21.    Articles 24, 25, 26 and 27 of the AGREEMENT require OTTAVINO and/or TRIBEC (collectively "EMPLOYER") to pay contributions to each of the FUNDS for all employees employed by EMPLOYER and covered by the AGREEMENT, in the amounts specified by the AGREEMENT, for each hour of work performed.

22.    Article 29 requires EMPLOYER to deduct and remit DUES for all LOCAL 1 members, as per the amounts specified in the AGREEMENT.

23.    Where the payment of wages and fringe benefit contributions are not made timely and require the FUNDS to institute a collection action, Article 24 of the AGREEMENT requires EMPLOYER to pay interest, liquidated damages, audit costs, attorneys' fees, costs and expenses to the full extent as provided by law.

24.    Article 27 of the AGREEMENT requires EMPLOYER to submit to an audit of their books and records and to pay any delinquent contributions, audit charges and attorneys' fees.  In addition, EMPLOYER is required to pay a service charge of ten percent (10%) of the amount found to be delinquent.

25.    Article 32 of the AGREEMENT forbids EMPLOYER from subcontracting or

subletting any work covered by the AGREEMENT to "any person, firm, or corporation which is not in a contractual relationship with LOCAL 1."

26. Article 27 of the AGREEMENT requires EMPLOYER to retain for a period of six (6) years payroll and related records necessary for a proper audit.

27. In the event EMPLOYER refuses to turn over the books necessary to conduct a proper audit, Article 27 of the AGREEMENT permits the Trustees to determine that:

1) EMPLOYER's monthly hours subject to contributions for each month of the audit period are the highest number of hours for any month during the twelve (12) preceding months audited; 2) the highest number of employee's hours for any month during the last twelve months for which reports were filed; or 3) a number of hours based on a labor factor analysis derived from contracts and invoices specifying the performance of bargaining unit work.

### Notification to the EMPLOYER

28. By letter dated November 6, 2006, sent via overnight mail, H&O on behalf of the FUNDS, advised EMPLOYER that checks for payment of contributions for the weeks of July 26, 2006 through August 1, 2006 and August 3, 2006 through August 8, 2006 were returned for insufficient funds and demanded that EMPLOYER re-issue two new checks.

29. EMPLOYER failed to respond to H&O's November 6, 2006 letter and failed to re-issue two new checks.

30. By letter dated March 8, 2007, H&O was informed by the FUNDS' auditor, Kobgo Associates, Inc., that TRIBEC failed to cooperate with an audit authorized by the FUNDS.

31. By letter dated March 23, 2007, H&O demanded that TRIBEC honor its

AGREEMENT and ERISA obligations and cooperate with an audit.

32.    To date, TRIBEC has failed to respond to the demands in H&O's March 23, 2007

demands.

## Violations of the AGREEMENT, ERISA and Common Law

33.    Pursuant to the AGREEMENT and ERISA, the FUNDS are entitled to injunctive

relief in the form of an order requiring EMPLOYER to produce for inspection and copying the

information from TRIBEC's complete books and records, to verify the accuracy of contributions

made by EMPLOYER.

34.    In  violation of the AGREEMENT and ERISA, EMPLOYER failed to remit

delinquent contributions to the FUNDS for the period July 2006 to date and continuing

throughout the pendency of this action, subject to verification by audit.

35.    Pursuant to 29 U.S.C. § 1132(g)(2) and the AGREEMENT, the FUNDS are

entitled to recover: a) all delinquent contributions for the period June 30, 2005 to date and

continuing throughout the pendency of this action, subject to verification by audit; b) liquidated

damages of twenty (20%) percent; c) interest at the rate of ten percent (10%) per annum; d)

injunctive relief; e) the costs of the audit; f) plus reasonable attorneys' fees, costs, and expenses.

36.    In  violation of the AGREEMENT, EMPLOYER failed to remit DUES to

LOCAL 1 for the period July 2006  to date and continuing throughout the pendency of this

action, subject to verification by audit.

37.    Pursuant to the AGREEMENT and New York CPLR §§ 5001 and 5004, LOCAL

1 is entitled to recover all delinquent DUES for the period June 30, 2005 to date and continuing

throughout the pendency of this action, and pre-judgment interest at 9% per annum from the due

date to the date paid.

## Fiduciary Claims

38.    New York Lien Law, Article 3A, §.70 imposes a trust upon all funds dedicated to an improvement of a parcel of real property.

39.    New York Lien Law, Article 3A also imposes a fiduciary duty on EMPLOYER to distribute the proceeds of the trust in accordance with the priority scheme set forth therein.

40.    Article 30 of the AGREEMENT binds EMPLOYER directly to the provisions of the Agreement and Declaration of Trust for each of the FUNDS as though EMPLOYER had actually signed the individual documents, and further binds EMPLOYER to all actions taken by the Trustees of each of the FUNDS pursuant to said Agreements and Declarations of Trust, as amended, and their respective plans, as amended.

41.    The Agreement and Declaration of Trust for each of the FUNDS provides in relevant part under Article II, Section 3 that "The Trust Fund continued hereby is for the purpose of providing…benefits for eligible Employees, participants and their beneficiaries as may be permitted by law under a plan of benefits adopted by the Trustees… "

42.    The Agreement and Declaration of Trust for each of the FUNDS provides in relevant part under Article II, Section 4 that: "The Trust Fund continued hereby shall be and constitute an irrevocable trust established for the exclusive benefit of Employees, all in accordance with Section 302(c) of the Labor Management Relations Act of 1974, as amended, in accordance with ERISA and in compliance with Sec. 501(c)(9) of the Internal Revenue Code. "

OTTAVINO As Fiduciary

43.    OTTAVINO exercised the authority to sign checks on behalf of EMPLOYER

including checks which should have been submitted to the FUNDS for contributions.

44.     In violation of the AGREEMENT and ERISA, EMPLOYER has failed to remit all contributions for the period July 2006 to date and continuing throughout the pendency of this action, subject to verification by audit.

45.     Pursuant to 29 U.S.C. § 1109(a) and the AGREEMENT, the FUNDS are entitled to recover from OTTAVINO the following: a) all delinquent contributions found due and owing from June 30, 2005 to date and continuing during the pendency of this action, subject to verification by audit; b) interest at ten percent (10%) per annum on all delinquent contributions (as defined in the AGREEMENT); c) the costs of an audit; and d) reasonable attorneys' fees, costs, and expenses.

46.     Pursuant to Article 29 of the AGREEMENT, EMPLOYER was required to remit DUES on a monthly basis to LOCAL 1 for each person represented by LOCAL 1 in the employ of EMPLOYER.

47.     Upon information and belief, OTTAVINO exercised dominion and control respecting management or disposition of union DUES that should have been held in trust by EMPLOYER and remitted to LOCAL 1.

48.     Upon information and belief, OTTAVINO failed to remit all union DUES due and owing to LOCAL 1 for EMPLOYER employees from July 2006 to date and continuing during the pendency of this action, subject to verification by audit.

49.     OTTAVINO interfered with plaintiff LOCAL 1's right to possess and control those DUES under common law.

50.     Pursuant to common law, LOCAL 1 is entitled to recover from EMPLOYER the

DUES for the time period between June 30, 2005 to date and continuing during the pendency of this action, subject to verification by audit, plus interest and attorney's fees thereon.

DOE FIDUCIARY As Fiduciary

51.    Upon information and belief, DOE FIDUCIARY exercised the authority to sign checks on behalf of TRIBEC including checks which should have been submitted to the FUNDS for contributions.

52.    In violation of the AGREEMENT and ERISA, DOE FIDUCIARY has failed to remit all contributions for the period July 2006 to date and continuing throughout the pendency of this action, subject to verification by audit.

53.    Pursuant to 29 U.S.C. § 1109(a) and the AGREEMENT, the FUNDS are entitled to recover from DOE FIDUCIARY the following: a) all delinquent contributions found due and owing from June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit; b) interest at ten percent (10%) per annum on all delinquent contributions (as defined in the AGREEMENT); c) the costs of an audit; and d) reasonable attorneys' fees, costs, and expenses.

54.    Pursuant to Article29 of the AGREEMENT, EMPLOYER was required to remit union DUES on a monthly basis to LOCAL 1 for each person represented by LOCAL 1 in the employ of TRIBEC.

55.    DOE FIDUCIARY exercised dominion and control respecting management or disposition of union DUES that should have been held in trust by EMPLOYER and remitted to LOCAL 1.

56.    DOE FIDUCIARY failed to remit union DUES due and owing to LOCAL 1 for

employees of TRIBEC for July 2006 to date and continuing throughout the pendency of this action, subject to verification by audit.

57.    DOE FIDUCIARY interfered with plaintiff LOCAL 1's right to possess and control those DUES under common law.

58.    Pursuant to common law, LOCAL 1 is entitled to recover from DOE FIDUCIARY the union DUES for June 30, 2005 to date and continuing during the pendency of this action, subject to verification by audit, and interest and attorney's fees thereon.

**Injunctive Relief**

59.    The EMPLOYER's failure to abide by the AGREEMENT will result in the FUNDS being required to deny the employee-beneficiaries of the FUNDS for whom required contributions may not have been made, the benefits provided thereunder, thereby causing to such employee-beneficiaries substantial and irreparable damage.

60.    Further, the FUNDS will be required to provide to employees of the EMPLOYER benefits provided for under the AGREEMENT, notwithstanding the EMPLOYER's failure to make required contributions, thereby reducing the corpus of funds administered by the FUNDS and endangering the rights of employee-beneficiaries thereunder on whose behalf contributions are being made, all to their substantial and irreparable injury.

61.    The FUNDS are without an adequate remedy at law and the employee-beneficiaries of the FUNDS and the members of LOCAL 1 will suffer immediate, continuing, and irreparable injury, loss, and damage unless the EMPLOYER is ordered to perform specifically all of its obligations to the FUNDS and LOCAL 1 under the terms of the AGREEMENT and is restrained from continuing its refusal to perform.

**AS AND FOR PLAINTIFF FUNDS' FIRST CLAIM
FOR RELIEF AGAINST EMPLOYER**

62.    Plaintiff FUNDS repeat and reallege paragraphs "1" through "61" hereof with the same force and effect as if such were fully set forth herein.

63.    EMPLOYER's failure to submit contributions due and owing the FUNDS as set forth in paragraphs "28" through "32" herein, constitutes a violation of 29 U.S.C. §§ 1132 and 1145.

64.    Accordingly, pursuant to 29 U.S.C. § 1132(g)(2), the FUNDS are entitled to recover the following: a) all unpaid contributions found due and owing for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit; b) liquidated damages in the amount of twenty percent (20%) on all unpaid contributions; c) simple interest at the rate of ten percent (10%) per annum (as defined in the AGREEMENT) on all unpaid contributions; d) the costs of the audit; and e) attorney's fees, expenses and the costs of the action.

**AS AND FOR THE PLAINTIFF FUNDS' SECOND CLAIM
FOR RELIEF AGAINST THE EMPLOYER**

65.    Plaintiff FUNDS repeat and reallege paragraphs "1" through "64" hereof with the same force and effect as if such were set forth here in full.

66.    EMPLOYER's failure to submit contributions due and owing to the FUNDS for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit, as set forth in paragraphs "28" through "32" herein, constitutes a violation of the AGREEMENT.

67.    Accordingly, the AGREEMENT entitles the FUNDS to receive from

EMPLOYER the following: a) all unpaid contributions for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit; b) the costs of an audit; and c) full damages pursuant to ERISA including liquidated damages of 20%, interest at 10% per annum (as defined in the AGREEMENT), costs of the action, attorney's fees, and expenses.

## AS AND FOR PLAINTIFF FUNDS' THIRD CLAIM
## FOR RELIEF AGAINST EMPLOYER

68.     Plaintiff FUNDS repeat and reallege paragraphs "1" through "67" hereof with the same force and effect as if such were fully set forth herein.

69.     29 U.S.C. § 1132, Article 27 of the AGREEMENT and the common law permit the FUNDS to conduct an audit of EMPLOYER to verify that the FUNDS receive the correct contributions.

70.     Accordingly, the FUNDS are entitled to an order requiring EMPLOYER to produce all of its books and records deemed necessary by the FUNDS' auditor to conduct an audit examination of EMPLOYER for the period June 30, 2005 to date.  In addition, the FUNDS are entitled to reimbursement for the costs of the audit pursuant to the AGREEMENT if a delinquency is found.

## AS AND FOR PLAINTIFF LOCAL 1'S FIRST CLAIM
## FOR RELIEF AGAINST EMPLOYER

71.     Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "70" of this Complaint, as if fully set forth herein.

72.     EMPLOYER's failure to remit DUES to LOCAL 1 for the period June 30, 2005 to date, as set forth in paragraphs "28" through "32" herein, constitutes a violation of Article 29 of

the AGREEMENT.

73.     Accordingly, EMPLOYER is liable to LOCAL 1 for the following: a) unremitted Dues for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit; and b) accrued prejudgment interest on said DUES.

## AS AND FOR THE PLAINTIFF FUNDS' FIRST CLAIM
## FOR RELIEF AGAINST DEFENDANT OTTAVINO

74.     The Plaintiff FUNDS repeat and reallege each and every allegation contained in paragraphs "1" through "73" of this Complaint as if fully set forth herein.

75.     EMPLOYER is required to make contributions to the FUNDS.

76.     OTTAVINO is a fiduciary under ERISA, 29 U.S.C. §1002(21)(A), with respect to the FUNDS, to the extent he exercises authority or control respecting management or disposition of FUNDS' assets on behalf of EMPLOYER.

77.     Similarly, OTTAVINO is a fiduciary under New York Lien Law, Article 3-A § 70 to the extent that he controls the proceeds received by EMPLOYER for work performed in the connection with an improvement of real property.

78.     OTTAVINO's failure to submit contributions due and owing from EMPLOYER to the FUNDS, as set forth in paragraphs "43" through "50" herein, constitutes a violation of ERISA fiduciary duties, 29 U.S.C. § 1104 and the fiduciary duties imposed by New York Lien Law, Article 3-A.

79.     Pursuant to ERISA, 29 U.S.C. §1109(a), OTTAVINO is personally liable to make good any losses to the FUNDS resulting from each such breach and to restore any profits which would have been made through use of assets of the FUNDS.

80.     Accordingly, pursuant to 29 U.S.C. §§ 1109 and 1132(g)(1), the FUNDS are

entitled to recover from OTTAVINO personally: a) all of EMPLOYER's unpaid contributions for the period June 30, 2005 to date and continuing through the pendency of this action, subject to verification by audit; b) accrued prejudgment interest on said unpaid contributions; and c) reasonable attorney's fees, expenses and the cost of the action, including the costs of the audit.

### AS AND FOR PLAINTIFF LOCAL 1's FIRST CLAIM
### FOR RELIEF AGAINST DEFENDANT OTTAVINO

81.    Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "80" hereof with the same force and effect as if fully set forth herein.

82.    In violation of the AGREEMENT and common law, OTTAVINO failed to remit DUES to LOCAL 1 for members employed by TRIBEC for the period June 30, 2005 to date and continuing through the pendency of this action, subject to verification by audit, as set forth in paragraphs "43" through "50."

83.    Pursuant to Article 29 of the AGREEMENT and common law, TRIBEC was required to remit DUES on a monthly basis to LOCAL 1 for each member of LOCAL 1 in the employ of TRIBEC.

84.    OTTAVINO, as an officer of TRIBEC, exercised dominion and control respecting management or disposition of DUES.

85.    OTTAVINO was obligated to hold DUES in trust and remit them to LOCAL 1 pursuant to the AGREEMENT and common law.

86.    OTTAVINO interfered with Plaintiff LOCAL 1's right to possess and control those DUES.

87.    Pursuant to the AGREEMENT and common law, OTTAVINO is personally liable to make good any losses to LOCAL 1 from any breach of his duty to remit DUES due and owing

to LOCAL 1.

88.    Accordingly, pursuant to the AGREEMENT and common law, LOCAL 1 is entitled to recover from OTTAVINO personally all unpaid DUES found due and owing for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit; and b) pre-judgment interest on said DUES.

## AS AND FOR THE PLAINTIFF FUNDS' FIRST CLAIM
## FOR RELIEF AGAINST DEFENDANT DOE FIDUCIARY

89.    The Plaintiff FUNDS repeat and reallege each and every allegation contained in paragraphs "1" through "88" of this Complaint as if fully set forth herein.

90.    EMPLOYER is required to make contributions to the FUNDS.

91.    DOE FIDUCIARY is a fiduciary under ERISA, 29 U.S.C. §1002(21)(A), with respect to the FUNDS, to the extent he/she exercises authority or control respecting management or disposition of FUNDS' assets on behalf of EMPLOYER.

92.    Similarly, DOE FIDUCIARY is a fiduciary under New York Lien Law, Article 3-A, § 70 to the extent that he/she controls the proceeds received by TRIBEC for work performed in the connection with an improvement of real property.

93.    DOE FIDUCIARY's failure to submit contributions due and owing from EMPLOYER to the FUNDS, as set forth in paragraphs "51" through "58" herein, constitutes a violation of ERISA fiduciary duties, 29 U.S.C. § 1104 and the fiduciary duties imposed by New York Lien Law, Article 3-A.

94.    Pursuant to ERISA, 29 U.S.C. §1109(a), DOE FIDUCIARY is personally liable to make good any losses to the FUNDS resulting from each such breach and to restore any profits which would have been made through use of assets of the FUNDS.

95.     Accordingly, pursuant to 29 U.S.C. §§ 1109 and 1132(g)(1), the FUNDS are entitled to recover from DOE FIDUCIARY personally: a) all EMPLOYER's unpaid contributions for the period June 30, 2005 to date and continuing through the pendency of this action, in an amount subject to verification by audit; b) accrued prejudgment interest on said unpaid contributions; and c) reasonable attorney's fees, expenses and the cost of the action, including the costs of the audit.

## AS AND FOR PLAINTIFF LOCAL 1's FIRST CLAIM
## FOR RELIEF AGAINST DEFENDANT DOE FIDUCIARY

96.     Plaintiff LOCAL 1 repeats and realleges each and every allegation contained in paragraphs "1" through "95" hereof with the same force and effect as if fully set forth herein.

97.     In violation of the AGREEMENT and common law, DOE FIDUCIARY failed to remit DUES to LOCAL 1 for members employed by TRIBEC for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit, as set forth in paragraphs "51" through "58" herein.

98.     Pursuant to Article 34 of the AGREEMENT and common law, TRIBEC was required to remit DUES to LOCAL 1 for each member of LOCAL 1 in the employ of TRIBEC.

99.     DOE FIDUCIARY exercised dominion and control respecting the management or disposition of DUES.

100.     DOE FIDUCIARY was obligated to hold the DUES in trust and remit them to Local 1.

101.     DOE FIDUCIARY interfered with Plaintiff LOCAL 1's right to possess and control those DUES under common law.

102.     Accordingly, pursuant to the AGREEMENT and common law, LOCAL 1 is

entitled to recover from DOE FIDUCIARY: a) all unpaid DUES due and owing for the period

June 30, 2005 to date and continuing throughout the pendency of this action, subject to

verification by audit; and b) pre-judgment interest on said DUES from the date the cause of

action accrued.

## AS AND FOR PLAINTIFF FUNDS' AND PLAINTIFF LOCAL 1'S
## FIRST JOINT CLAIM FOR RELIEF AGAINST EMPLOYER

103.    Plaintiffs FUNDS and LOCAL 1 repeat and reallege each and every allegation

contained in paragraphs "1" through "102" of this Complaint, as if fully set forth herein.

104.    As described in paragraphs "28" through "32" herein, EMPLOYER has failed do

the following: a) remit contributions timely for all employees performing work covered by the

AGREEMENT; and b) remit DUES timely for all employees performing work covered by the

AGREEMENT. EMPLOYER's conduct demonstrates a significant likelihood that they will

continue to breach the terms of the AGREEMENT.

105.    Plaintiffs FUNDS and LOCAL 1 have no adequate remedy at law to ensure that

EMPLOYER will adhere to the terms of the AGREEMENT.

106.    Participants of plaintiff FUNDS and members of plaintiff LOCAL 1 will suffer

immediate and irreparable injury unless EMPLOYER, its officers, agents, servants and

employees are enjoined from failing to pay the required contributions and DUES pursuant to the

AGREEMENT.

107.    Accordingly, plaintiffs FUNDS and LOCAL 1 request this Court to enjoin

permanently EMPLOYER, their officers, agents, servants, employees, and all persons in active

concert or participation with them from failing to do the following: a) pay contributions to the

FUNDS as they come due; and b) pay DUES to LOCAL 1 as they come due. Plaintiffs are

entitled to such relief pursuant to the AGREEMENT and ERISA.

**WHEREFORE**, plaintiffs FUNDS and LOCAL 1 hereby request judgment as follows:

1.  against EMPLOYER for all outstanding past due contributions to the FUNDS from June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit, pursuant to 29 U.S.C. § 1132;

2.  against EMPLOYER for payment of all outstanding DUES for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit, along with interest thereon in accordance with the AGREEMENT and Common Law;

3.  against EMPLOYER for statutory liquidated damages of twenty percent (20%) on all contributions found due and owing under the AGREEMENT, in accordance with ERISA;

4.  against the EMPLOYER for interest at the rate of ten percent (10%) on all unpaid contributions found to be due and owing under the AGREEMENT, in accordance with ERISA and the AGREEMENT;

5.  against EMPLOYER for all audit costs in accordance with ERISA and the AGREEMENT;

6.  against EMPLOYER for attorneys' fees, costs and expenses from this action in accordance with the AGREEMENT and ERISA;

7.  against EMPLOYER in the form of an Order under 29 U.S.C. § 1132 the AGREEMENT and the common law requiring EMPLOYER to produce all its books and records deemed necessary by the FUNDS' auditor for inspection and copying to determine the correct amount of contributions due and owing the FUNDS;

8.  against EMPLOYER permanently enjoining EMPLOYER, its officers, agents, servants, employees and all person in active concert or participation with them, from failing to do the following: a) timely pay contributions to the FUNDS ; and b) timely pay DUES to LOCAL 1;

9.  against EMPLOYER in the form of an Order under 29 U.S.C. §1132 and the common law, permitting the FUNDS the right to estimate and enter judgment on the amount of EMPLOYER's contributions due and owing and to assess prejudgment interest of 10% per annum (as defined in the AGREEMENT) on said contributions, liquidated damages of twenty percent (20%) on said contributions, audit costs, reasonable attorney's fees, costs and expenses;

10.   against EMPLOYER for accrued prejudgment interest on all unpaid DUES found to be due and owing under the AGREEMENT;

11.   against OTTAVINO and DOE FICUDIARY for all outstanding past due contributions to the FUNDS, for the period June 30, 2005 to date and continuing throughout the pendency of this action, subject to verification by audit, in accordance with ERISA;

12.   against OTTAVINO and DOE FIDUCIARY for payment of all unpaid DUES due and owing LOCAL 1 for the period June 30, 2005to date and continuing throughout the pendency of this action, subject to verification by audit;

13.   against OTTAVINO and DOE FIDUCIARY for accrued prejudgment interest on all outstanding past due contributions to the FUNDS;

14.   against OTTAVINO and DOE FIDUCIARY for accrued prejudgment interest on all outstanding past due DUES to LOCAL 1;

15.   against OTTAVINO and DOE FIDUCIARY for attorney's fees, costs and expenses, including the cost of an audit, from this action, in accordance with ERISA; and

16.   for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 26, 2007

HOLM & O'HARA LLP

By: _____
Delmas A. Costin, Jr. (DC 2926)
HOLM & O'HARA LLP
Attorneys for Plaintiffs
420 Lexington Avenue, Suite 1745
New York, New York  10170
(212) 682-2280

L:\VFO\STONESET.84\4088.009-Tribec\New Tribec Case\Pleadings\Tribec.Complaint.doc

**EXHIBIT B**

# INDEX

ARTICLE 1:    Term.................................................................1
ARTICLE 2:    Work Day.........................................................1
ARTICLE 3:    Recognition......................................................1
ARTICLE 4:    Travel Allowence..............................................2
ARTICLE 5:    Payment Procedure..........................................3
ARTICLE 6:    Overtime...........................................................4
ARTICLE 7:    Jurisdiction.......................................................4
ARTICLE 8:    Employer/Union Member..................................6
ARTICLE 9:    Discharge..........................................................6
ARTICLE 10:   Job Seeking.......................................................7
ARTICLE 11:   Arbitration.........................................................7
ARTICLE 12:   Removal of Employes fro Delinquent
              Contributions...................................................8
ARTICLE 13:   Tools/Clothing/Shanty......................................9
ARTICLE 14:   Shop Steward...................................................9
ARTICLE 15:   Safety...............................................................10
ARTICLE 16:   Apprenticeship System....................................11
ARTICLE 17:   Foreman...........................................................11
ARTICLE 18:   Number of Employees......................................12
ARTICLE 19:   I.U.B.A.C. - CBA & Other CBA's.....................13
ARTICLE 20:   Notice...............................................................13
ARTICLE 21:   Union Dues Books.............................................13
ARTICLE 22:   Non-Union Employees......................................14
ARTICEL 23:   Severability.......................................................14
ARTICLE 24:   Wages & Fringe Benefit Contributions...............15
ARTICLE 25:   Stone Tenders....................................................18
ARTICLE 26:   Trust Funds.......................................................22
ARTICLE 27:   Funds Audit.......................................................23
ARTICLE 28:   Favorable Terms................................................23
ARTICLE 29:   Dues Checkoff...................................................24
ARTICLE 30:   Trust Agreements..............................................25
ARTICLE 31:   Non-Employers..................................................26
ARTICLE 32:   Subcontracting/Subletting..................................26

This Collective Bargaining Agreement ("Agreement"), is made by and between _____, (hereinafter known as the "Employer") and the Bricklayers and Allied Craftsworkers Local Union No. 1 ("Local 1" and/or "Union").

## ARTICLE 1
## TERM

The term of this Agreement is to run from July 1, 1999 to June 30, 2002, inclusive.

Either party in this Agreement shall notify the other party sixty (60) days before the first Tuesday of April 2002 of any change desired. This notification will be sent by Registered mail.

## ARTICLE 2
## WORKDAY

The hours of labor shall be from 8:00 A.M. to 3:30 P.M. with a half hour lunch from 12:00 noon to 12:30 P.M.

Flexible starting time may be utilized on all jobs at the option of the Employer. Flexible starting time must be utilized on a job site basis and only after notice on or before noon on Tuesday preceding the payroll week. Flexible starting time must be used for one (1) or more payroll weeks as the program is currently run in the industry. Starting time must be between the hours of 7:00 A.M. and 9:00 A.M. with lunch after four (4) hours.

## ARTICLE 3
## RECOGNITION

Section 1.   (a)   This Agreement is effective in the region of the New York City and all of Long Island within the State of New York. The Union is hereby recognized as the exclusive Collective

-1-

Bargaining Agent of all Stone Setters, Stone Tenders and Apprentices ("employee(s)") employed by the Employer Party to this Agreement. The terms "Stone Setter", "Stone Tenders" and "Apprentices" shall include, but not limited to, all persons employed on work specified in Article 7 hereof.

(b) Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union, pursuant to Section 9 (a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as a result of NLRB election requested by the employees. The Employer agrees that it will not request an NRLB election.

## ARTICLE 4
## TRAVEL ALLOWANCE

On all work within the confines of Greater New York, the employee shall receive seven (7) hours work, namely from 8:00 A.M. to 3:30 P.M. provided there is no notice and consent to use flexible time. All Journeymen Stone Setters and Stone Tenders who are required to go on jobs outside the confines of Greater New York shall receive the following travel allowances:

Staten Island.................................................$7.00 per day
Nassau County...............................................$7.00 per day
Suffolk County...............................................$10.00 per day

Any Stone Setter or Stone Tender who reports at the job site but does not start work that day must be paid ten dollars ($10.00) travel pay for that day.

-2-

## ARTICLE 5
## PAYMENT PROCEDURE

Employees shall be paid every week before quitting time on Thursday. The amount so paid shall be enclosed in envelopes, with in cash marked thereon and with the proper deductions for Social Security and Withholding Taxes. The employer's name and address shall be printed on the outside of the envelope. The Employer may pay by check, provided that the dishonoring of any check shall entitle the employee so inconvenienced to fourteen (14) hours additional pay, and said employer must then pay by certified check, reviewed by the Arbitration Board to determine whether or not and under what conditions said contractor may resume payments by check. The payroll week shall be determined at the discretion of the Employer and shall continue for the duration of the project. The payroll week must end between Monday and Thursday. Once the Employer determines the payroll week, it may only be changed upon mutual consent of the parties. Upon written notice , the Employer may elect to end the payroll week on Sunday and employees must be paid every week before quitting time on Wednesday.

If an employee is required to work overtime on a day which he is laid-off, payment for the overtime work shall be remitted within three (3) days. Any lay-off within payroll period shall be made at least one (1) hour prior to quitting time. Layoffs shall become effective at quitting time 3:30 P.M. or seven (7) hours after flexible starting time. Stamps for laid-off employees may be mailed by Employers to the Union postmarked the next business day. Replacement Journeymen Stone Setters must be paid by check mailed to the Union and postmarked within seventy two (72) hours of the last day worked or the next applicable pay day, whichever is first.

-3-

## ARTICLE 6
## OVERTIME

All overtime on Sundays and holidays, shall be paid at double time rates. All overtime work in excess of seven (7) hours on weekdays, first two (2) hours of overtime shall be paid at a rate of time and a half, thereafter it shall be double time. A full hour's pay shall be paid for any portion of the hour worked. First seven (7) hours on Saturday will be at time and a half, thereafter it will be at double time.

No work shall be performed on the following six holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving and Christmas Day. Permission to work on any of the above six holidays, due to an emergency, may be granted by the Trade Board. Work performed on the following two holidays, Washington's Birthday and Good Friday, shall be paid at the established premium rate for overtime. In addition, Employees shall only be required to work for half day on Christmas Eve. Employees shall receive a full day's wages for work performed on this half day.

## ARTICLE 7
## JURISDICTION

A qualified Journeyman Stone Setter shall have supervision over all men engaged on operations where cut stone or any substitute is used. The Stone Setter shall have sole jurisdiction over hand derricks in connection with the setting of stone.

Section 1. Stonemasonry shall consist of, but not limited to, the following work procedures and installation of the following materials:

-4-

A. The laying of all rip rap, rubble work, with or without mortar, setting all cut stone, marble, slate or stone work (meaning, as to stone, any work manufactured from such foreign or domestic products as are specified and used in the interior or on the exterior of buildings by architects and customarily called "stone" in the trade); cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the bids and joints, and range ashlar not over 10 inches in height; the dressing upon of all jambs, corners and ringstones that are roughly dressed upon the beds, joints or reveals, and the cutting of a draft upon same for plumbing purpose only, and the cleaning, cutting of joints and pointing of stone work.

B. This is to apply to all work in buildings, sewers, bridges, railroads, bulkheads, breakwaters, jetties, playgrounds, parks, landscaping and cubing or other public works, and to all kinds of stone, particularly to the product of the locality where work is being done. Stonemasons shall have the right to use tools which they consider necessary in the performance of their work.

C. Cleaning, grouting, pointing, and other necessary work to achieve and complete the work under the foregoing categories.

Section 2. This Agreement includes the setting and pointing of artificial stone or any precast concrete or other substitute for cut stone. This is to apply to all work on buildings, viaducts, bridges and all other work including all stoops, doorways and vestibules within Greater New York and Long Island. This Agreement shall also include all work formerly performed by employees represented for collective bargaining by Stone Masons Subordinate Local 33 New York.

-5-

Section 3.    All repairs, renovations, alterations, cleaning, roughing and patching, cutting out of joints and pointing on old stone work shall come under the classification of this Agreement. The contractor shall furnish all special cutting tools on this work. It is understood and agreed that any additional work jurisdiction negotiated with any other association or employer may be added to this agreement upon written agreement between the parties.

Section 4.    Where the contractor elects to erect his own scaffold, Stone members of Local No. 1 shall retain the right to hang, set, operate, assemble, move, and otherwise handle all scaffolding required for the performance of their duty, with the exception of scaffolding used and erected for multi-trade purpose.

### ARTICLE 8
### EMPLOYER/UNION MEMBER

Any employee who becomes an employer must take out a withdrawal card of membership from the Union and his membership shall cease, excepting any benefits that have accrued.

### ARTICLE 9
### DISCHARGE

When employees are discharged for any cause, they shall upon request of payment of wages be paid an hour before quitting time. A violation of this ruling entitles the employee(s) to compensation at working rates for the working time that elapses between the time of discharge and the time of receiving his money providing the claimant remains at the job during all the working hours until he is paid. This time will not exceed two days. No claims for waiting time shall be allowed in excess of fourteen (14) hours.

-6-

Any person sent to an operation at the request of the employer and not started, weather permitting shall receive four hours pay. If a Journeyman Stone Setter is started on an operation and laid off the same day, he shall receive no less than seven (7) hours pay.

Upon request of the Foreman to remain on the job after 9:00 A.M. because of conditions, the man shall be paid from 8:00 A.M. until told to leave the job provided the men remain on the job available for work from 8:00 A.M. If an employee is ordered out on Saturday, Sunday or Holidays and does not start, he shall receive four (4) hours pay at overtime rates. The employer will endeavor to advise employees of any weekend overtime by noon Friday.

### ARTICLE 10
### JOB SEEKING

Any Stone Setter, Stone Tender and Apprentice shall be allowed to go upon any job when seeking employment within the jurisdiction of Local 1.

### ARTICLE 11
### ARBITRATION

All grievances or complaints which cannot be satisfactorily adjusted between the individual employer and the Union will be submitted to a Stone Trade Board which shall consist of three (3) Stone setting contractors selected by the Employer and three (3) persons selected by the Union. The Stone Trade Board shall have the power to render a decision determining the facts in dispute and to order the parties hereto to take such action as may be necessary to assure compliance therewith, including the determination and imposition of damages and fines and the costs of the Stone Trade Board proceeding and such decision shall be final and binding and conclusive with full rights of enforcement in any court of compe-

-7-

tent jurisdiction. In the event of a tie vote, any party to the dispute may submit the controversy to the American Arbitration Association for the Appointment of an Arbitrator, whose decision will be final, binding and conclusive upon the parties with full rights of enforcement in any court of competent jurisdiction. The cost of the arbitration shall be borne by the party against whom the award is rendered.

## ARTICLE 12
## REMOVAL OF EMPLOYEES FOR DELINQUENT CONTRIBUTIONS

No employee shall work for any one not complying with rules and regulations herein agreed to. If a building be abandoned for any cause, on which wages and various Funds contributions of any of the employees are unpaid when due, the employees shall reserve the right to work hereon until such wages and contributions are paid. After receipt of notice of delinquency as aforesaid the Employer must pay in full all fringe benefit contributions.

After a delinquency and a notice by registered mail from the Union after notice from the Administrators, to the delinquent employer of an intention to remove employees, any employee so removed because of nonpayment of said contribution shall be paid for lost time not to exceed two (2) days' pay. The parties to this Agreement provide, however, that at all times the Trustees of the Fringe Benefit Funds shall have the absolute discretion to establish new or modified rules and regulations concerning payments of contributions to the Funds, including the requirement that payments be made frequently.

## ARTICLE 13
## TOOLS/CLOTHING/SHANTY

Employees shall provide themselves with the proper kit of tools, for which they shall be provided a suitable tool box by their Employer, properly locked for the protection of his tools and clothing only, said box to be moved from floor to floor as the job proceeds. Employers that are not members of the Employer shall be liable for all losses of clothing and tools at the job site. A member of the Employer is only responsible for loss of clothing and tools due to the forcible entry or burning of shanty, tool house or box, or lack of such facilities, and such liability shall be limited to a sum not to exceed:

$75.00.................................................for a suit of clothes
$80.00.....................................................................for shoes
$500.00........................................................for tools for Setters
$100.00.......................................................for tools for Tenders
$50.00.....................................................for working clothes

Payment to employees for losses of tools and clothing shall be made by the Employer within fifteen (15) working days of such losses. Tools shall include a four (4) foot level, trowel, mallet, setting bar, hammer, pitching tool, two (2) carbide chisels, canvass tool bag, six (6) foot ruler, fifty (50) foot tape, chalk box, dry line, assorted wrenches and sixteen (16) ounce plumb bob.

Under no circumstances shall an employer apply himself to the setting, cleaning or pointing of any stone work. Only Journeymen Stone Setters shall work with any and all of the tools necessary to the trade.

The Employer shall furnish all materials necessary for the setting, pointing and cleaning of all stone or substitutes thereof.

A shanty shall be supplied by the Employer to provide heat in the winter months upon the following terms and conditions: (a) The heat is supplied by the general contractor or construction manager free of charge to the Employer, (b) There must be a minimum of 3 Stone Setters working on the job site for a minimum anticipated period of 6 weeks; (c) The shanty is located reasonably close to the stone setting operations.

## ARTICLE 14
## SHOP STEWARD

Section 1.    Shop Steward
(a) To effect the observance of this Agreement, each job shall have a Shop Steward appointed as follows: the second person employed shall be referred by the Union and designated as Shop Steward. The Employer may layoff one shop steward. However, the Employer, for just cause, reserves the right under this Agreement as to the continued employment of the replacement Shop Steward.

(b) The Shop Steward shall determine that all Stone Setters and Stone Tenders on the job are employed in accordance with this Agreement. He shall see that the classification of trade as defined herein is and that all terms of this Agreement are complied with. He shall retain possession of the key to the toolhouse and see that it is open in ample time at starting time, securely locked at quitting times.

(c) The Employer shall not interfere with the Shop Steward's performance of his duties as such which shall be performed with the least inconvenience to his Employer as possible. He is to work as a Stone Setter and not to use his position as Shop Steward as an excuse to avoid performance of his duties as a Stone Setter. He shall be one (1) of the last two (2) Stone Setters on the operation including the Foreman, provided he is capable of performing the work.

-10-

with, when visiting any operation where Stone Setters are employed.

Section 2.    Union representatives shall not be interfered with, when visiting any operation where Stone Setters are employed.

Section 3.    If a Shop Steward be discharged for inspecting the cards of the employees on the job, or for calling the Foreman's attention to any violations of this Agreement, he shall be reinstated at once until the matter is brought before the joint Arbitration Committee for settlement. No Shop Steward shall be discharged for inquiry after the cards of men working on any job nor shall the business Agent be interfered with when visiting any operation where Journeyman Stone Setters are employed.

## ARTICLE 15
## SAFETY

Protection must be provided by either the general contractor, mason builder or owner whenever necessary to protect life and limb.

In the event of an injury by accident to an employee, the Shop Steward shall immediately cease work, and shall then investigate the cause of the accident and gather all evidence, such as would be useful to establish any claim of the injured member or beneficiary thereof.

## ARTICLE 16
## APPRENTICESHIP SYSTEM

Both parties to this Agreement agree to maintain an adequate apprenticeship system for the industry, such system to be administered by a joint committee, appointed in equal number by the Union and the Employer. Each employer shall make the designated contribution to the Apprenticeship Fund through the prepurchase of Stamps as set forth in article 26. Apprentices may be used in a

-11-

setting gang. Wages of apprentices shall be the following percentage of Journeyman's rate:

50%.......................the first 750 hours
60%.......................the second 750 hours
70%.......................the third 750 hours
80%.......................the fourth 750 hours
90%.......................the fifth 750 hours
100%.......................the sixth 750 hours

One apprentice may be employed for each two stone setters employed on the job.

## ARTICLE 17
## FOREMAN

When four or more employees are on an operation or employed by a firm, a setter shall be designated as Foreman, who shall receive at least as much above the standard rate of wages as other Foremen over their standard rate (with a minimum of $12.00 per day) worked above the standard rate). He shall be paid straight time.

## ARTICLE 18
## NUMBER OF EMPLOYEES

When setting pre-cast or a panelized stone system up to an elevation of 50 feet above grade (street level), a minimum of one (1) Stone Setter shall be utilized regardless of the size of the unit. If, in the Employer's discretion, another employee is needed to set stone up to an elevation of fifty (50) feet on pre-cast or a panelized stone system, the employee shall be a second Stone Setter. A second Stone Setter will be utilized on pre-cast or a panelized stone system where the elevation is fifty (50) feet or above.

-12-

## ARTICLE 19
## I.U.B.A.C. - CBA
## AND OTHER CBA's

The Employer shall not enter into any other collective bargaining agreement which provides for manning the work of the Stone Setter or Stone Tender.

If an Employer having an agreement directly with the I.U.B.A.C. of America does any work in the territory covered by this Agreement, the employer must comply with all the conditions contained in this Agreement.

## ARTICLE 20
## NOTICE

All employers agree to notify the office of Subordinate Union 1, New York, or Business Agent, prior to starting date of any stone setting operation.

## ARTICLE 21
## UNION DUES BOOKS

On jobs where employees are required to obtain identification tags or cards before starting and are required to return same to the job office at quitting time, or where the tool house provided for their tools and wearing apparel is distant one hundred fifty (150) feet from the building operation, Employees shall not leave the tool house until starting time and the same consideration shall be allowed them at quitting time.

Consideration shall be given to employees working above twelve (12) stories if elevator service is not maintained, a reasonable time being allowed to and from work.

-13-

All employees will be trained under OSHA's Hazard Communications Standard and also be given a C.P.R. course. The Union shall not be liable for any of the cost and expense of this training course.

All employees shall produce within forty eight (48) hours of the Employer's request, identification cards certifying to the completion of said training. Employees shall not be entitled to receive compensation for attending such training course.

## ARTICLE 22
## NON-UNION EMPLOYERS

No Stone Setter, Stone Tender or Apprentice shall perform work for any Employer, including subcontractors, not signing an agreement to comply with all rules and regulations and to pay wages as provided in this Agreement within the jurisdiction limits.

The Employer shall provide to the Union a list of the Employer members, giving each member's full name and address, including the name of the principal officer of each member on an annual basis.

## ARTICLE 23
## SEVERABILITY

It is further agreed by and between the parties hereto that if any Federal or State court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such decision shall not invalidate the other portions of this Agreement, but any such clause or clauses declared void or illegal by a Federal or State court shall be stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto.

-14-

## ARTICLE 24
## WAGES AND FRINGE BENEFIT CONTRIBUTIONS

Section 1.    Stone Setters wages and fringe benefit contributions for the duration of this Agreement shall be as follows:

Wage/Fringe Package

Current $55.90.

7/1/99    $1.67 increase to be allocated and re-allocated by the Union between wages and/or funds.  Total $57.57.

7/1/2000 $1.96 increase to be allocated and re-allocated by the Union between wages and/or funds.  Total $59.53.

7/1/2001 $2.24 increase to be allocated and re-allocated by the Union between wages and/or funds.  Total $61.77.

-15-

## STONE SETTERS
### WAGES AND BENEFIT SCALE
### EFFECTIVE JULY 1, 1999 - August 31, 1999

Pursuant to the provisions of the Trade Agreement, we wish to advise you that a distribution of $1.67 per hour increase, effective July 1, 1999 wages and fringe benefits contributions have been increased to $57.56 per hour.

The wage/fringe breakdown effective is as follows:

| (TAXABLE) | |
|---|---|
| WAGES | $31.23 PER HOUR |
| LOCAL DUES CHECK OFF | 0.70 PER HOUR |
| I.U. DUES CHECK OFF | 0.57 PER HOUR |
| DEFENSE FUND | 0.11 PER HOUR |
| I.U. BAC PAC | 0.03 PER HOUR |
| LOCAL BAC PAC | 0.02 PER HOUR |
| VACATION FUND | 6.50 PER HOUR |
| (TOTAL TAXABLE) | $38.18 PER HOUR |

| (NON-TAXABLE) | |
|---|---|
| INTL. PENSION FUND | $ 1.50 PER HOUR |
| I.M.I. | 0.75 PER HOUR |
| INSURANCE & WELFARE | 6.00 PER HOUR |
| NEW YORK PENSION FUND | 5.30 PER HOUR |
| ANNUITY FUND | 5.50 PER HOUR |
| LABOR MAGMT. RELATIONS | 0.20 PER HOUR |
| IATC | 0.15 PER HOUR |
| | $19.40 PER HOUR |

-15A-

## APPRENTICE RATES

| (TAXABLE) | |
|---|---|
| WAGES | $15.62 PER HOUR |
| I.U DUES CHECK OFF | 0.30 PER HOUR |
| LOCAL DUES CHECK OFF | 0.36 PER HOUR |
| DEFENSE FUND | 0.05 PER HOUR |
| VACATION FUND | 2.75 PER HOUR |
| LOCAL BAC PAC | 0.01 PER HOUR |
| IU BAC PAC | 0.02 PER HOUR |
| (TOTAL TAXABLE) | $19.11 PER HOUR |

| (NON-TAXABLE) | |
|---|---|
| I.U. PENSION FUND | $ 0.60 PER HOUR |
| I.M.I. | 0.33 PER HOUR |
| INSURANCE & WELFARE | 6.00 PER HOUR |
| NEW YORK PENSION FUND | 2.65 PER HOUR |
| ANNUITY FUND | 2.75 PER HOUR |
| JATC | 0.08 PER HOUR |
| LMO | 0.20 PER HOUR |
| | $12.61 PER HOUR |

TOTAL PACKAGE                $31.72

($4.00 PER DAY TOOL ALLOWANCE)

-15B-

**STONE TENDERS**
**WAGES AND BENEFIT SCALE**
**EFFECTIVE JULY 1, 1999 - August 31, 1999**

"Pursuant to the provisions of the Trade Agreement, we wish to advise you that a distribution of $1.08 per hour increase, effective July 1, 1999 wages and fringe benefits contributions have been increased to $37.24 per hour.

The wage/fringe breakdown effective is as follows:

| | |
|---|---|
| WAGES | $27.73 PER HOUR |
| LOCAL DUES CHECK OFF | 0.52 PER HOUR |
| I.U. DUES CHECK OFF | 0.37 PER HOUR |
| DEFENSE FUND | 0.11 PER HOUR |
| BAC PAC NY LOCAL #1 | 0.02 PER HOUR |
| BAC PAC INTL. | 0.02 PER HOUR |
| *(TOTAL TAXABLE)* | $28.77 PER HOUR |

| | |
|---|---|
| *(NON-TAXABLE)* | |
| INTL. PENSION FUND | $ 1.50 PER HOUR |
| WELFARE FUND | 4.40 PER HOUR |
| ANNUITY FUND | 1.87 PER HOUR |
| DEFENSE FUND | 0.11 PER HOUR |
| I.M.I. | 0.55 PER HOUR |
| LABOR MAGMT. RELATIONS | 0.10 PER HOUR |
| JATC | 0.05 PER HOUR |
| LOCAL DUES NY LOCAL#1 | 0.52 PER HOUR |
| I.U. DUES | 0.37 PER HOUR |
| BAC PAC LOCAL #1 NY | 0.02 PER HOUR |
| BAC PAC INTL. | 0.02 PER HOUR |
| | $ 9.51 PER HOUR |

**STONE SETTERS**
**WAGES AND BENEFIT SCALE**
**EFFECTIVE SEPTEMBER 1, 1999**

The wage/fringe breakdown effective September 1, 1999 is as follows:

| | |
|---|---|
| WAGES | $31.84 PER HOUR |
| LOCAL DUES CHECK OFF | 0.70 PER HOUR |
| I.U. DUES CHECK OFF | 0.58 PER HOUR |
| DEFENSE FUND | 0.11 PER HOUR |
| I.U. BAC PAC | 0.03 PER HOUR |
| LOCAL BAC PAC | 0.02 PER HOUR |
| VACATION FUND | 6.00 PER HOUR |
| *(TOTAL TAXABLE)* | $39.28 PER HOUR |

| | |
|---|---|
| *(NON-TAXABLE)* | |
| INTL. PENSION FUND | $ 1.50 PER HOUR |
| I.M.I. | 0.75 PER HOUR |
| INSURANCE & WELFARE | 4.88 PER HOUR |
| NEW YORK PENSION FUND | 5.30 PER HOUR |
| ANNUITY FUND | 5.50 PER HOUR |
| LABOR MAGMT. RELATIONS | 0.20 PER HOUR |
| JATC | 0.15 PER HOUR |
| | $18.28 PER HOUR |

**APPRENTICE RATES**
(Starting Apprentice)

| (TAXABLE) | |
| --- | --- |
| WAGES | $16.24 PER HOUR |
| I.U DUES CHECK OFF | 0.32 PER HOUR |
| LOCAL DUES CHECK OFF | 0.36 PER HOUR |
| DEFENSE FUND | 0.05 PER HOUR |
| VACATION FUND | 3.25 PER HOUR |
| LOCAL BAC PAC | 0.01 PER HOUR |
| IU BAC PAC | 0.01 PER HOUR |
| (TOTAL TAXABLE) | $20.25 PER HOUR |
| | |
| (NON-TAXABLE) | |
| I.U. PENSION FUND | $ 0.60 PER HOUR |
| I.M.I. | 0.33 PER HOUR |
| INSURANCE & WELFARE | 4.88 PER HOUR |
| NEW YORK PENSION FUND | 2.65 PER HOUR |
| ANNUITY FUND | 2.75 PER HOUR |
| JATC | 0.08 PER HOUR |
| LMO | 0.20 PER HOUR |
| | $11.48 PER HOUR |
| | |
| TOTAL PACKAGE | $31.74 |

($4.00 PER DAY TOOL ALLOWANCE)

-17-

Contributions for Apprentices who have obtained 2250 hours are one hundred percent (100%) of the fringe benefit contribution of a Stone Setter.

Section 2.     Fringe Benefits will be based upon hours paid. Four dollars ($4.00) per day will be paid as a Tool Allowance for the duration of this Agreement for all Stone Setters and Apprentices.

All increments to be allowed to fringe benefit funds shall not exceed the IRS 25% of compensation rule. The reduced fringe benefit rate set forth above for apprentices shall apply only when the Apprentice works with a Journeyman (i.e., if the Apprentice works alone fringe benefits shall be paid at the Journeyman rate).

It is understood and agreed that the total hourly increase due at each yearly interval may be reallocated by Local 1 upon notice to the Employer, if such reallocation is determined to be necessary by the Trustees of the Fringe Benefit Funds. Increases in wages and benefits shall be coordinated with the beginning of the nearest payroll week.

The prompt submission of reports and payments of all wages and contributions provided for in this Article is essential for the continued efficient operation of each of the Funds.

An employer who fails to make prompt timely payment of wage or fringe benefit contributions which necessitates enforcement or collection procedures (arbitration, court, N.R.L.B, or otherwise) shall be required to pay all costs and expenses in connection with such procedures including attorney's fees and such other assessments, interest, and liquidated damages as shall be adopted by the Trustees of such Funds and as shall otherwise be provided by applicable law.

-18-

**ARTICLE 25**
**STONE TENDERS**

Section 1.    Stone Tenders wages and fringe benefit contributions for the duration of this Agreement shall be as follows:

**Wage/ Fringe Package**

Current $36.16

7/1/99    $1.08 Increase to be allocated and re-allocated by the Union between wages and/or funds.

7/1/2000 $1.27 Increase to be allocated and re-allocated by the Union between wages and/or funds.

7/1/2001 $1.45 Increase to be allocated and re-allocated by the Union between wages and/or funds.

-19-

The foregoing Apprentice fringe benefit rate shall apply to Apprentices only during the first two (2) years of their employment as Apprentices (for all employers combined) under this Agreement. Thereafter, they shall receive the same fringe benefit as provided to Journeymen under this Agreement. The reduced fringe benefit rate set forth above for apprentices shall apply only when the Apprentice works with a Journeyman (i.e., if the Apprentice works alone fringe benefits shall be paid at the Journeyman rate).

It is understood and agreed that the total hourly increase due at each yearly interval may be reallocated by Local 1 upon notice to the Employer, if such reallocation is determined to be necessary by the Trustees of the Fringe Benefit Funds.  Increases in wages and benefits shall be coordinated with the beginning of the nearest payroll week.

The prompt submission of reports and payments of all wages and contributions provided for in this Article is essential for the continued efficient operation of each of the Funds.

An employer who fails to make prompt timely payment of wage or fringe benefit contributions which necessitates enforcement or collection procedures (arbitration, court, N.R.L.B., or otherwise) shall be required to pay all costs and expenses in connection with such procedures including attorney's fees and such other assessments, interest, and liquidated damages as shall be adopted by the Trustees of such Funds and as shall otherwise provided by applicable law.

-20-

Section 3. Duties of the Stone Setters shall be to tend to the need of Stone Setters to include: Handling of natural stone, artificial stone precast or any substitute for stone; The unloading of all equipment and material needed to accomplish any stone setting operation; Operation of fork lifts or lulls for unloading or distributing stone, cement, rigging, plank, anchors, angle irons or any other material needed to accomplish any stone setting operation.

Section 4. Local No. 1 shall have the right to have health and welfare fringe benefits for Stone Tenders provided through the Bricklayers Fringe Benefits Fund of BAC Local No. 1.

Section 5. Stone Tenders who are Certified Welders along with setters who are certified welders shall do all welding on stone jobs. All of the duties of a Stone Tender shall be done under the supervision of a Stone Setter Foreman. Stone Tenders shall be required to do all rigging and hanging of chain falls. They shall be able to demonstrate proper hand signals to equipment operators of cherry pickers and conventional cranes when stones are being set from 50 feet elevation and below.

Section 6. On jobs where 6 or more Stone Tenders are employed, one shall be foreman, who shall be required to report to work, and perform assigned duties, five days a week, and shall receive straight time pay, except for layoff, and shall perform work assigned by the Employer.

Section 7. There shall be no manning ratios for Stone Tenders, except on panel, curtainwalls, truss or architectural precast where Stone Setters and Stone Tenders shall form a composite crew which shall be 50-50. If crew consists of an uneven amount of men, the contractor shall have the right to select the additional man. This crew shall be responsible for all bolting, welding, drilling, burning and any other operation which may be needed in the erection process.

## ARTICLE 26
## TRUST FUNDS

All the following Funds shall be administered by joint committees of Trustees and shall at all times be under the protection, supervision and control of said committees of Trustees. The Union shall furnish the Administrator with signed copies of all Collective Bargaining Agreements.

The contributions for all Funds shall be deposited into various Funds accounts to be used to purchase insurance, hospitalization, medical sick benefits, vacations, etc., in accordance with the Trust Agreements.

All payments for stamps shall be by check for members of the Employer. All payments other than members of the Employer shall be in cash, certified check, or bank check. Payment of wages to individual employees shall be by check from members of the Employer. Any other employers shall pay cash, or certified check.

No stamps shall be furnished to any delinquent employer, each employer must make a positive or negative employment report by the 15th of the month following each calendar month of employment. No stamps may be sold to an employer, not making such report. At the same time as the above report is made, the employer shall furnish the Fund Office with individual checks for payments for Labor-Management Cooperation Fund and Apprenticeship Fund.

The employee who continues to work for any employer after not receiving his weekly pay and/or fringe benefit stamps, and does not notify the Union of Fund Office of such fact shall have his eligibility suspended for all Funds until the delinquencies have been paid by the employer.

The intent of the foregoing provisions is to prevent unscrupulous employers and employees conspiring to deprive the Funds and other employees of the proper amount of contributions and benefits.

An employer purchasing stamps by check will be charged 2% administrative fee if the check is dishonored by the bank.

Stone Setters who are full-time paid officers of the Union shall be considered employees of the Union and shall become parties to various Funds on the same conditions as other Journeyman Stone Setters. In such case the Union shall pay the contributions as any other employer to the Funds.

## ARTICLE 27
## FUNDS AUDIT

Each employer shall at all times permit an audit of its books and records by the Trustees of the several trust Funds named herein, or their designated representatives, in order to determine whether correct contributions have been made. The employer agrees that if it is found delinquent in the payment of contributions, or if it fails to permit an audit of its books and records, the employer shall pay reasonable attorneys fees incurred by the Trustees, audit charges, and a service charge of ten (10%) percent of the amount found to be delinquent.

## ARTICLE 28
## FAVORABLE TERMS

The Union agrees that in the event it enters into any contract with any employer or association within the territorial jurisdiction of Local 1 which shall provide more favorable terms to such employer, including rates of pay or conditions of employment, than are provided in this Agreement, it will and hereby does authorize

-23-

the Employer to adopt such more favorable terms as its option. Under the exercise of such option by the Employer upon at least ten (10) days written notice thereof to the Union, such more favorable terms and conditions will immediately and automatically become a part of this Agreement.

## ARTICLE 29
## DUES CHECKOFFS

The employer agrees to deduct from the wages of each employee covered by this Agreement who individually, in writing, duly authorizes the employer to make such deductions for Union dues, the amount of assessments provided for in Article 24 of this Agreement. The Union agrees to obtain a written authorization of dues checkoff of every person referred by the Union to the employer.

The original signed authorization cards shall be kept on file at the offices of the Union, and a copy thereof shall be kept on file at the offices of the Employer.

Remittance by the employer of the sums deducted from wages shall be made by pre-purchase of Stamps utilized for the making of contributions to the various Fringe Benefit Funds provided for in this Agreement. Remittance by the Fund office to the Union shall be made after receipt of employer reports verifying employee dues checkoff. Each employer shall remain responsible for the remittance of any dues withheld from its employees in excess of the Stamp purchase for such purpose. Each employer shall file the report form furnished for reporting dues checkoff. Neither the Funds nor the Trustees thereof shall have any responsibility for the collection of dues withheld by employers hereunder.

The transmittal of dues checkoff to the Fund office is only a convenience and neither the Funds nor the Trustees thereof shall have

-24-

any interest in or any responsibility with respect thereto.

The Form of Authorization to be signed by each employee with respect to whom a deduction is to be made shall be approved by counsel for the parties hereto.

It is expressly agreed that the authorizations furnished under this Article shall be of no force and effect and no deductions shall be made by any employer when there is no collective bargaining agreement in effect to which the employer and the Union are parties.

It is expressly agreed that the Union assumes full responsibilities for the validity and legality of the deductions from the employee's wages made by such employer and remitted to the Union pursuant to this Article and the Union hereby agrees to indemnify and hold the employer harmless from all claims, losses, expenses, liability and damages to which the employer at any time may be subject by reason thereof. If any such claim is asserted or threatened against the employer, the Union and the employer agree that the Union, at its sole cost and expense shall undertake the defense of such claim on behalf of the employer and the employer shall cooperate with the Union in the defense thereof.

## ARTICLE 30
## TRUST AGREEMENTS

The employer agrees to be bound by the provisions of the Trust Agreement pertaining to Welfare, Pension, Annuity, Additional Security Benefits, Vacation, Apprenticeship, and Labor-Management Cooperation Funds, and any amendments thereto. The employer agrees to abide by the decision of the Trustees of said respective Funds.

-25-

## ARTICLE 31
## NON-EMPLOYERS

Contractors who exclusively perform pointing, caulking, cleaning, sandblasting, patching, insulating, applying sealants and cutting out joints, must notify the Union within forty eight (48) hours of starting operations. Failure to notify the Union within forty eight (48) hours will result in a penalty of $500.00 per day to be paid to the Union until notice is given. These contractors shall complete and file with the Union a report indicating the names of the employees, their social security numbers, the type of work performed and the number of hours of each type of work performed by each employee on a form provided by the Union. This report is separate from the remittance report, and must be filed with the Union by the fifteenth (15th) day of the month for work performed in the preceding month.

## ARTICLE 32
## SUBCONTRACTING/SUBLETING

The Employer agrees not to subcontract or sublet any new construction work covered by this Agreement to any person, firm or corporation which is not in a contractual relationship with Local 1.

## ARTICLE 33
## BONDING

Any Employer that does not maintain a permanent office within the jurisdiction of this Agreement or that has not purchased Ten Thousand ($10,000.00) dollars in stamps within the previous twelve (12) months shall be required to post a bond in the amount of Ten Thousand ($10,000.00) dollars from an acceptable surety company to guarantee the obligations of the Employer to the Journeymen Stone Setters Local 1 Fringe Benefit Funds as provided in

-26-

of this Agreement. Fringe Benefit stamps if applicable shall not be sold to any Employer failing to comply with this Addendum.

-27-

The undersigned employer has read the Stone Setters and Stone Tenders Agreement between the Employer and the Bricklayers and Allied Craftworkers Local Union No. 1, as set forth in the foregoing pages and agrees to abide and be absolutely bound by such Agreement and any modification or amendments that may be executed between the above parties during the term of this Agreement. The undersigned is affixing his signature in a dual capacity both on behalf of himself and on behalf of the employer and represents by his signature his authority to bind the firm and the principals and members thereof.

Employer_____

Signature and Title_____

Print or Type Name and Title_____

Address (Print or Type)_____

Telephone No._____

Accepted By:
BRICKLAYERS AND ALLIED CRAFTSWORKERS
LOCAL UNION NO. 1

By:_____
Santo Lanzafame, President

-28-

**EXHIBIT C**

MEMORANDUM OF AGREEMENT
BETWEEN
INDEPENDENT CONTRACTORS
AND
BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL UNION NO. 1
STONE SETTERS AND STONE TENDERS

BAC Local Union No. 1, New York ("Local 1") has concluded negotiations with Independent Contractors for the stone setting and stone tending trades. The following changes to the Collective Bargaining Agreement between Independent Contractors and Local 1 Stone Setters and Stone Tenders effective July 1, 2002 to June 30, 2005 have been agreed upon and will commence on July 1, 2005 and extend for a period of four (4) years. All other terms and conditions of the prior agreement shall remain in full force and effect.

The following changes were agreed upon:

## TERM OF AGREEMENT

The term of this Agreement shall be July 1, 2005 through June 30, 2009 and this Agreement shall incorporate all previous terms and conditions Collective Bargaining Agreement between Independent Contractors ("employer") and Local 1 Stone Setters and Stone Tenders effective July 1, 2002 to June 30, 2005 except as modified herein.

## WAGES

| STONE SETTER | STONE TENDER |
|---|---|
| Current Wage and Fringe Benefits $70.57 | Current Wage and Fringe Benefits $45.96 |
| July 1, 2005 Increase $2.00 | July 1, 2005 Increase $1.50 |
| July 1, 2006 Increase $2.00 | July 1, 2006 Increase $1.50 |
| July 1, 2007 Increase $2.00 | July 1, 2007 Increase $1.50 |
| July 1, 2008 Increase $2.00 | July 1, 2008 Increase $1.50 |

All increases to be allocated and re-allocated by Local 1.

In the event that the employer enters into any agreement with any other trade or craft containing a more favorable annual increase in the wage and benefit package than those contained herein, the employer agrees that such more favorable terms and conditions shall automatically be extended to Local 1 and the employees covered by this Agreement.

The employer and Local 1 agree that this Agreement is pursuant to Section 9A of the National Labor Relations Act. The employer hereby: a) acknowledges that Local 1 has demonstrated proof that Local 1 represents a majority of employees performing the bargaining unit work described by the Agreement; b) recognizes Local 1 as the exclusive collective bargaining agent for all employees within the bargaining unit on all present and future jobsites and c) agrees that Local 1 Stone Setters shall perform all work of the stone setting trade as described in the Agreement and Local 1 Stone Tenders shall perform all work of the stone tender trade as described in the Agreement.

IN WITNESS WHEREOF, the parties have signed this agreement on the 30th day of June, 2004.

B.A. LOCAL UNION NO. 1
Stone Setters and Stone Tenders

_Seth Langesamo_
President

_Jermiad Sullivan_
Secretary Treasurer

_____
Date

INDEPENDENT EMPLOYER

_TRIBEC LTD_
Company Name

_22-03 45-TS AV_
Street Address

_LIC    NY 11101_
City, State & Zip Code

_718 4334595_
Telephone Number

_ADAM OLUCINO_
Print Name

_Cede Ott_
Signature

_7/18/06_
Date

<u>CERTIFICATE OF SERVICE</u>

DAVID J. ARONSTAM, an attorney duly admitted to practice before the courts of New York State, affirms the following under the penalties of perjury:  I am not a party to the action, am over 18 years of age and reside at New York, New York.  On June 15, 2007,  I served the DEFENDANTS' NOTICE OF MOTION AND SUPPORTING DECLARATION on:

> Delmas Costin, Esq.
> Holm & O'Hara LLP
> Attorneys for Plaintiffs
> 3 West 35th Street, 9th floor
> New York, New York 10001

by depositing a true copy thereof by first class mail enclosed in a post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

Dated: New York, New York
   June 15, 2007

DAVID J. ARONSTAM